IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSEPH A. SHERMAN,

    Petitioner,                      No. CIV S–04-1310 LKK KJM P

    vs.

YOLO COUNTY CHIEF            ORDER AND
PROBATION OFFICER, et al.,

    Respondents.            FINDINGS AND RECOMMENDATIONS
_____/

        Petitioner is proceeding pro se with this petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his Yolo County convictions for resisting arrest, interference with the business of a public agency and battery on a transit passenger, all misdemeanors.

I. Background

    A. The Charged Offenses

        Milton Shinn, a bus driver for Yolo Bus, was working the morning shift on February 27, 2003. RT 36. Petitioner was one of the passengers who got on the bus at County Fair Mall around 11:55 a.m. RT 37. Passenger Michael Gilbert was standing slightly behind Shinn, asking directions. RT 37, 39, 52, 80. Petitioner got on the bus and then attempted to pass between Gilbert and Shinn, saying he had a right to go anywhere he wanted. RT 37, 39. There was plenty of room for petitioner to pass by Gilbert on the right, but petitioner pushed Gilbert out

1

1   of the way. RT 40, 52, 58. Had Gilbert not been holding on to the rail, he would have fallen.
2   RT 52, 57.

3         Petitioner and Gilbert began shouting and shoving. RT 40, 64. Eventually Gilbert
4   went to the back and Sherman sat down. RT 41. Sherman announced to the other passengers
5   that he had not done anything wrong. RT 53.

6         Shinn called his dispatcher, who advised him to ask petitioner to get off the bus.
7   RT 41. When he did, petitioner said, "I'm a paying customer. This is a public bus. I don't have
8   to do what you say. I don't have to leave." RT 41, 65. Shinn reported this to the dispatcher,
9   who said he would call the police. RT 42.

10         Shinn asked Gilbert to step off the bus and they waited for the police to arrive.
11   RT 42, 53. Officers Jack Schubert and Frances DeLeon told petitioner he was trespassing and
12   asked him to get off the bus, but he again refused and said he was being harassed. RT 42, 63-64,
13   65, 81. Petitioner said, "I didn't do anything. I just pushed him out of the way." RT 70, 81, 95.

14         Because petitioner would not get up from his seat, the officers got on each side of
15   him. RT 43, 54. Petitioner pulled his arms in close to his body to keep them away from the
16   officers. RT 66, 73, 83. When the officers got control of him, petitioner then went limp, so they
17   had to drag him off the bus. RT 43, 54, 65, 66, 83.

18         Shinn was not able to resume his route for twenty to thirty minutes because of the
19   delay in removing petitioner from the bus and because the officers were taking statements.
20   RT 43-44, 96. There were eight or nine other passengers on the bus. RT 44.

21         Petitioner testified on his own behalf. On February 23, he paid his fare and started
22   to walk to his seat. RT 112. Gilbert was in the middle of the aisle, not to the side, and he got in
23   petitioner's way. Id. Petitioner started to walk around him, but Gilbert would not let him go by.
24   Id. Petitioner said, "I need to get by here." Id. Petitioner did not push Gilbert; rather, he said
25   "get out of my way. I need to take a seat." RT 113. After a minute, Gilbert got out of
26   petitioner's way. Id.

Petitioner then told Shinn that Gilbert was causing trouble, but Shinn told the dispatcher that petitioner had been belligerent. Id. When the police arrived, petitioner attempted to tell them his side of the incident, but they just grabbed him. RT 114. He resisted passively because he had not done anything wrong. RT 114, 116.

B. The Incident In January

Shinn had contact with petitioner in January 2003. RT 44. Shinn had the wheelchair lift lowered to load a passenger when petitioner pushed by, saying he had been there first. RT 45, 142. Shinn asked petitioner to get off the bus and when he refused, called the dispatcher, who called the police. RT 45. Shinn did not recall that petitioner had been on the bus before the wheelchair passenger arrived and did not recall asking petitioner to get off the bus. RT 140. Officer Schubert responded and removed petitioner from the bus for trespassing. RT 45, 71-72. Shinn had not been able to load the wheelchair passenger before the police arrived. RT 144.

Petitioner testified that Shinn had asked him to get off the bus in January when he had not done anything wrong. RT 110. Petitioner got off, but then the driver started to load a woman in a wheelchair. Id. Petitioner then jumped back on the bus and told Shinn he was discriminating against petitioner. Id. Petitioner was ultimately taken to jail, but the charges were dropped. Id.

Karen Whala testified that she was on the bus in January when the driver asked petitioner to get off. Petitioner complied, saying that "there was injustice in this." The driver then got off to assist a handicapped person and petitioner got back on the bus. RT 133.

Between the two incidents, Shinn saw petitioner, again near the bus stop at County Fair Mall. RT 45. Petitioner ran up to Shinn saying, "You falsely arrested me, and you're going to get yours." Id. Petitioner testified, in contrast, that he had merely rebuked Shinn after the first incident. He has not sued or said anything like "you'll get yours." RT 116.

/////

3

### C. Further Background

Petitioner was placed on probation for thirty-six months with the condition that he serve forty days in jail and attend counseling for anger management. Lodged Doc. 2.

He appealed the conviction to the Appellate Division of the Yolo County Superior Court, which affirmed his conviction in a short, two-page order. Lodged Doc. 5.

Petitioner pursued his state remedies in the Court of Appeal for the Third Appellate District, which denied his petition. Lodged Doc. 9.

Finally, petitioner then filed a petition for a writ of habeas corpus in the California Supreme Court, which denied the petition with citations to Ex parte Swain, 34 Cal.2d 300, 304 (1949), People v. Duvall, 9 Cal.4th 464, 474 (1995), In re Waltreus, 62 Cal.2d 218 (1965) and Ex parte Dixon, 41 Cal.2d 756 (1953). Lodged Doc. 8.

### D. Exhaustion Of State Remedies

In King v. Roe, 340 F.3d 821, 823 (9th Cir. 2003), the Ninth Circuit concluded that a California court's citation to Ex parte Swain, 34 Cal.2d at 304 and Duvall, 9 Cal.4th at 474, means that a defendant has failed to exhaust state remedies, because the defendant is being given an opportunity to amend his pleadings to "allege with sufficient particularity the facts warranting habeas relief." In this case, it is not clear whether the Swain/Duvall citation applies to all or only some of the issues raised in the Supreme Court petition; this translates to uncertainty whether the instant petition is completely or only partially unexhausted.

Although respondent has not raised exhaustion in the answer, this court can no longer find that respondent has waived exhaustion based on litigation conduct. Banks v. Dretke, 540 U.S. 668, 674 (2004); 28 U.S.C. § 2254(b)(3). Nevertheless, the court may address petitioner's claims "when it is perfectly clear that the petitioner has no chance of obtaining relief." Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005), cert. denied sub nom. Schriro v. Cassett, 546 U.S. 1172 (2006). After considering the petition and its exhibits, the answer, reply

/////

4

and state court record, the court finds the Cassett standard has been satisfied, and thus addresses all of petitioner's claims below.

II. Standard Under The AEDPA

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA"). See Ramirez v. Castro, 365 F.3d 755, 773-75 (9th Cir. 2004) (Ninth Circuit affirmed lower court's grant of habeas relief under 28 U.S.C. § 2254 after determining that petitioner was in custody in violation of his Eighth Amendment rights and that § 2254(d) does not preclude relief); see also Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003) (Supreme Court found relief precluded under § 2254(d) and therefore did not address the merits of petitioner's Eighth Amendment claim).[1] Courts are not required to address the merits of a particular claim, but may simply deny a habeas application on the ground that relief is precluded by 28 U.S.C. § 2254(d). Lockyer, 538 U.S. at 71 (overruling Van Tran v. Lindsey, 212 F.3d 1143, 1154-55 (9th Cir. 2000) in which the Ninth Circuit required district

---

[1] In Bell v. Jarvis, 236 F.3d 149, 162 (4th Cir. 2000), the Fourth Circuit Court of Appeals held in a § 2254 action that "any independent opinions we offer on the merits of constitutional claims will have no determinative effect in the case before us . . . At best, it is constitutional dicta." However, to the extent Bell stands for the proposition that a § 2254 petitioner may obtain relief simply by showing that § 2254(d) does not preclude his claim, this court disagrees. Title 28 U.S.C. § 2254(a) still requires that a habeas petitioner show that he is in custody in violation of the Constitution before he or she may obtain habeas relief. See Lockyer, 538 U.S. at 70-71; Ramirez, 365 F.3d at 773-75.

courts to review state court decisions for error before determining whether relief is precluded by § 2254(d)). It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d). See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different. As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002). A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to indicate an awareness of federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S. 919 (2003). Where the state court fails to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable. Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). In other words, the court assumes the state court applied the correct law, and analyzes whether the decision of the state court was based on an objectively unreasonable application of that law.

1   It is appropriate to look to lower federal court decisions to determine what law has

2   been "clearly established" by the Supreme Court and the reasonableness of a particular

3   application of that law.  See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999).

4   III.  Fraud On The Court And Misconduct (Argument I)

5   The jury was selected on the afternoon of May 13, 2003.  RT 12.  After explaining

6   procedures to the jury, the court said, "At this point, I'm going to excuse you for the day.  We'll

7   see you at 9:00 o'clock in the morning.  Have a good evening."  RT 17.  The transcript then notes

8   "Proceedings held outside the presence of the jury."  Id.  The prosecutor observed:

> . . . I've seen Joe Sherman in trial before.  He generally takes the stand, in which case this won't apply, but during opening statement if he testifies, I'd ask that he be subject to cross-examination whether or not he takes the stand or not.
>
> THE COURT: Mr. Sherman and I have been through a number of trials, and Mr. Sherman probably knows the jury trial process better than most.  If I find that Mr. Sherman is testifying rather than making an opening statement, I'll remind him.

14  RT 18-19.  The next morning, petitioner made a motion for a mistrial because "inappropriate

15  evidence was allowed yesterday when you said that you've had me for two other trials."  RT 25.

16  This motion was denied.  RT 26.

17  Petitioner argues that the transcript is incorrect, that the first exchange occurred in

18  the jury's presence, and that the trial judge made false statements at a later hearing to correct the

19  record.  Am. Petition (Pet.) at 5.[2]  He then argues that he was prejudiced by the prosecutor's

20  reference to other trials and to undercut the prejudicial impact, "he acquiesced regarding

21  informing the jury of previous false arrests, speaking up regarding the many false arrests. . . ."

22  Id. at 11.  Indeed, during his testimony, petitioner mentioned "a total of six false arrests

23  committed against me by Yolo Bus."  RT 109.  He also offered as his Exhibit 10 a copy of the

24  minutes from Yolo County Case Number 02-5529, another prosecution stemming from an

---

[2] Petitioner has attached a 48 page petition to the habeas form used by this district.  The page references are to the 48 page document.

7

1  incident on a Yolo Bus, presumably the January incident; this exhibit was admitted into
2  evidence.  RT 126, 158.
3           Respondent argues there was no misconduct and that if petitioner suffered any
4  prejudice, it was of his own making.  Answer at 5.
5           A.  The Trial Court Record
6           As exhibits to his state habeas, petitioner included a copy of a motion to correct
7  the record and the Yolo County Superior Court's ruling on that motion.  Lodged Doc. 7, Mot. For
8  Corrections of Record of Appeal, filed 9/22/03.  As he does in this court, petitioner alleged that
9  the passage quoted above occurred in the presence of the jury.  Lodged Doc. 7, Mot. For Jury
10 Testimony, filed 10/01/03.  The court granted the motion in part, directing that two corrections
11 be made.  Lodged Doc. 7, Order To Correct Clerical Errors, filed 10/24/03.  The order did not
12 direct, however, that the transcript be reflected to show that the statements about petitioner's
13 other trials occurred in the presence of the jury.  Id.
14          "The written record made by the State court of competent jurisdiction . . . must be
15 presumed to be correct unless the petitioner proves by convincing evidence that it is not."
16 Gingrich v. Oberhauser, 305 F.Supp. 738, 741 (C.D. Cal. 1969).  Moreover, when the petitioner
17 has received a hearing in the state court of his claim that the transcript was wrong, the state
18 court's findings are presumed to be correct.  Woods v. Dugger, 711 F.Supp. 586, 599 (M.D. Fla.
19 1989).
20          Petitioner has not overcome the presumption that the state court record is accurate
21 nor the presumption that the trial court's findings following his motion to correct the record are
22 correct.  As did the state courts, this court finds that the comments by the prosecutor and the
23 court did not occur in the presence of the jury.
24          B.  Prejudicial Impact
25          Even if this court assumes that the jury heard the court and prosecutor discuss
26 petitioner's earlier trials, it cannot find this had a substantial and injurious effect on the jury, the

8

1  standard of error that must apply.  <u>Fry v. Pliler</u>, ___ U.S. ___, 127 S.Ct. 2321, 2327 (2007).  It is
2  true that evidence that a defendant has committed prior criminal acts may be highly prejudicial,
3  for it may suggest that the defendant is a person of bad character.  <u>Albrecht v. Horn</u>, 485 F.3d
4  103, 127-28 (3d Cir. 2007).  In this case, however, the remarks from the court and the prosecutor
5  did not mention any prior criminal acts and did not say that petitioner had been convicted of any
6  crimes: the most the jury could infer from these statements is that petitioner had stood trial
7  before.

8        Moreover, even before these statements were made, petitioner had planned to
9  present evidence of the January incident.  At the initial hearing on the morning of the first day of
10 trial, petitioner told the court he wanted to present witnesses concerning "a previous false arrest
11 by the same driver."  RT 6.  The comments from the prosecutor and the court added little to the
12 information that petitioner was already prepared to offer to the jury.  He cannot now complain of
13 the prejudicial impact of evidence he presented.  <u>Fish v. Cardwell</u>, 523 F.2d 976, 977-78 (9th Cir.
14 1975); <u>Nieto v. Sullivan</u>, 879 F.2d 743, 746 (10th Cir. 1989).

15 IV.  <u>Invidious Discrimination (Arguments II & VII)</u>

16       As respondent observes, this argument is "a rambling, incoherent narrative" about
17 the numerous "false arrests" petitioner has suffered, followed by vindication when "he has
18 proven himself innocent."  Answer at 6, 11; Pet. at 12, 29-30.  The argument appears to be that
19 he has been singled out for arrest and prosecution and thus is subject to invidious discrimination.

20       "[T]he decision whether to prosecute may not be based on an unjustifiable
21 standard such as race, religion, or other arbitrary classification" or on the exercise of a
22 constitutional right.  <u>United States v. Armstrong</u>, 517 U.S. 456, 464 (1996) (internal quotations
23 & citations omitted); <u>United States v. Taylor</u>, 693 F.2d 919, 922 (9th Cir. 1982).
24 /////
25 /////
26 /////

> To establish a prima facie case of selective prosecution, a defendant must show both (1) that others similarly situated have not been prosecuted, and (2) that the prosecution is based on an impermissible motive, i.e., discriminatory purpose or intent.

United States v. Davis, 36 F.3d 1424, 1432 (9th Cir. 1994). A court must presume that a prosecutor has not violated equal protection unless the defendant presents clear evidence to the contrary. Armstrong, 517 U.S. at 465.

Similar principles govern a claim of selective or discriminatory arrest or enforcement of the laws by police: to prevail, petitioner must show that "enforcement had a discriminatory effect and the police were motivated by a discriminatory purpose," which must be supported by evidence that "similarly situated individuals . . . were not prosecuted." Rosenbaum v. City And County Of San Francisco, 484 F.3d 1142, 1152-53 (9th Cir. 2007).

In this case, petitioner has presented only his own conclusory allegations, which do not show that petitioner was singled out for an impermissible purpose or that other similarly situated individuals have not been arrested or prosecuted. He has not borne his burden.

V. Sufficiency Of The Evidence (Arguments III, V, XI & XII)

Petitioner challenges the sufficiency of the evidence, arguing that the testimony of bus driver Shinn and police officer Schubert is tainted by their involvement in the January incident and that passenger Gilbert's testimony is shot through with contradictions. Pet. at 14-20, 41, 43-45. In argument V, he alleges that the officers were not performing their duties when they ordered petitioner off the bus. Id. at 23. As respondent notes, although the basis of the argument is not clear, it too appears to be a challenge to the sufficiency of the evidence.

/////
/////
/////
/////
/////

In Jackson v. Virginia, the Supreme Court examined the role of a habeas court in considering a challenge to the sufficiency of the evidence:

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

443 U.S. 307, 319 (1979) (emphasis in original).

The Court continued:

> [A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.

Id. at 326. As the Ninth Circuit has recognized, the trier of fact's credibility determination is entitled to near total deference under Jackson. Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004).

This court must apply the Jackson standard with "explicit reference to the substantive elements of the criminal offense as defined by state law" and with an extra layer of deference to the state court's determination, as mandated by AEDPA. Jackson, 443 U.S. at 324 & n.16; Juan H. v. Allen, 408 F.3d 1262, 1274-75 (9th Cir. 2005), cert. denied, 546 U.S. 1137, 126 S.Ct. 1142, 1145 (2006).

A. Interference With The Business Of A Public Agency

Petitioner was charged with a violation of California Penal Code § 602.1 (b), interference with the lawful business of a public agency, intimidation of those attempting to carry on business with the agency, and refusal to leave the premises when asked. The testimony of Shinn, Gilbert, Schubert and DeLeon showed that petitioner intimidated Gilbert by shoving him as he asked directions and that petitioner refused to leave the bus when asked to by Shinn and the officers. See RT 40, 52 (shoving), 41, 53-54 (refused to leave the bus). Moreover, the aftermath

/////

of the incident delayed the bus by twenty to thirty minutes. RT 44, 96. Petitioner's attacks on the credibility of these witnesses get him nowhere. Bruce, 376 F.3d at 957.

Although the second prong of petitioner's attack is again hard to interpret, petitioner suggests he did not interfere with the business of Yolo Bus because he had a right to be on the bus and it was the officers, in their zeal to violate his rights, who caused the bus to be delayed. Pet. at 43-45. This argument is not well taken; as discussed in subsection C below, the officers had probable cause to arrest petitioner for battery and it was petitioner's refusal to cooperate with the arresting officers that delayed and otherwise disrupted the bus.

B. Battery

Petitioner also was charged with a violation of California Penal Code § 243.3, battery on a bus passenger. Conviction of this offense requires a willful and unlawful use of force or violence on a bus passenger. In re David S., 133 Cal.App.4th 1160, 1165 (2005). Any harmful or offensive touching satisfies the force element. People v. Pinholster, 1 Cal.4th 865, 961 (1992). Gilbert and Shinn both testified that petitioner pushed Gilbert rather than moving around him and Schubert and DeLeon testified that petitioner admitted pushing Gilbert out of the way. RT 40, 52 (shoving), 70, 81 (statement to police). Petitioner offers his own testimony, that he had not pushed Gilbert, as demonstrating the insufficiency of the evidence. Pet. at 41; RT 112-113, 125. Under Jackson, 443 U.S. at 326, this court must rely on the version of the facts that favors the prosecution. Those facts are sufficient to prove a battery.

C. Resisting Arrest

Finally, petitioner was convicted of resisting arrest in violation of California Penal Code § 148(a)(1). One element of that offense is that the officer at the time of the offense be engaged in the lawful performance of his duties; "[t]his means, where the offense is committed upon an officer effecting an arrest, the arrest must have been lawful." People v, Wilkins, 14 Cal.App.4th 761, 776 (1993). Petitioner appears to be alleging that the arrest was not lawful because the officers had not established probable cause for the arrest.

12

This argument is not well taken. The test for whether probable cause exists is whether "at the moment of arrest the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." United States v. Jensen, 425 F.3d 698, 704 (9th Cir. 2005), cert. denied, 547 U.S. 1056 (2006) (internal citation & quotation omitted). This may be based on a report from a single, credible witness. Driebel v. City of Milwaukee, 298 F.3d 622, 643 (7th Cir. 2002).

Before the officers entered the bus, they had spoken to Shinn, who reported that petitioner had pushed Gilbert and then refused Shinn's directive to leave the bus. RT 64-65, 80. When the officers approached petitioner on the bus, petitioner told them he had "just pushed that guy out of [the] way." RT 81. Shinn's account, coupled with petitioner's admission, established probable cause for petitioner's arrest. Accordingly, the evidence in support of the charge of resisting arrest is sufficient.

VI. <u>Improper Question To Defense Witness (Argument IV)</u>

Petitioner argues that he was prejudiced when the court asked Whala whether she had ever been convicted of a felony or anything other than a traffic ticket. RT 136-137. The witness denied receiving even a parking ticket. Id. Petitioner makes only a conclusory argument that the questioning prejudiced his defense.

When a defense witness is impeached with a felony conviction, the risk of prejudice is not as great as when the defendant is impeached because "the jury cannot directly infer the defendant's guilt from someone else's criminal record." United States v. Lipscomb, 702 F.2d 1049, 1063 (D.C. Cir. 1983). In this case, Whala did not disclose any felonies, nor was there an attempt to prove any such offenses with documentary evidence. This is not the type of prejudice that jeopardized petitioner's right to a fair trial, for petitioner has not shown that this isolated inquiry, which resulted in nothing damaging to the witness's credibility and cast no

/////

improper light on petitioner, was so unduly prejudicial that it rendered his trial fundamentally unfair.  See Darden v. Wainwright, 477 U.S. 168, 179-80 (1986).

VII.  Restrictions On Opening Statement (Argument VI)

Petitioner argues that the trial court improperly restricted his opening statement while giving the prosecutor leeway to argue "about any & every subject . . . ."  Pet. at 26; see also RT 31 ("He was able to give an introduction.  I'd like to give an introduction to what's going on.").  He contends that these restrictions violated his right to equal protection and his right to a fair trial.

During the prosecutor's opening statement, petitioner did not object when the prosecutor discussed the difference between assault and battery, but instead objected only when the prosecutor gave an overview of the facts; petitioner's initial objection — "[h]e can't say what happened because he wasn't there" — was overruled.  RT 27.  His second, interposed when the prosecutor began to discuss trial procedures, was sustained.  RT 30.

During petitioner's opening statement, the prosecutor objected a number of times: when petitioner asked the jury a hypothetical question, when he attempted to explain his conception of a person's First Amendment rights in public places, when he endeavored to outline his understanding of the relationship between the law of battery and of self-defense and the right to resist an unlawful arrest.  RT 30-33.  The court sustained several objections, admonishing petitioner to "stick to the facts."  Id.  When petitioner did begin to "stick to the facts," the prosecutor did not object.  RT 33-34.

There is no constitutional right to give an opening statement.  Herring v. New York, 422 U.S. 853, 863 n.13 (1975).  When a statement is permitted, its purpose is "to make it easier for the jurors to understand what is to follow and to relate parts of the evidence and testimony to the whole; it is not an occasion for argument."  United States v. Dinitz, 424 U.S. 600, 612 (1976) (Burger, J., concurring).

/////

Case 2:04-cv-01310-LKK-KJM   Document 40   Filed 08/24/07   Page 15 of 18

Because petitioner has no constitutional right to give an opening statement, the court's restrictions did not violate petitioner's right to a fair trial. Moreover, the court intervened in petitioner's opening only when the prosecutor objected; had petitioner objected during the prosecutor's opening, the court might well have intervened as well. Petitioner has not shown his constitutional rights were violated.

VIII. Prosecutorial Misconduct In Closing (Argument VIII)

Gilbert testified that petitioner "was really pushing me" and that he would have fallen if he had not been holding on to the railing. RT 52. In argument, the prosecutor noted that petitioner had pushed Gilbert so that he almost fell down and then said petitioner hit Gilbert. RT 181. Petitioner characterizes this as a lie and as misconduct.

In general, a prosecutor's actions will not be grounds for habeas relief unless they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden, 477 U.S. at 180 (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)).

A prosecutor has wide latitude in arguing to a jury, but misstating the evidence may be deemed to be misconduct. Gillard v. Mitchell, 445 F.3d 883, 897 (6th Cir. 2006), cert. denied, ___ U.S. ___, 127 S. Ct. 1485 (2007) (wide latitude); Le v. Mullin, 311 F.3d 1002, 1023 (10th Cir. 2002) (mischaracterization of the evidence). In this case, the distinction between a hit and a push is not great, so the comment appears to fit within the prosecutor's wide latitude in arguing his case.

Even if the remark was improper, however, it did not infect the trial with unfairness. First, the court instructed the jury that it must base its decision on the law and the facts and that a fact is something proved by the evidence. RT 159. The court also told the jury that counsel's statements were not evidence and that they were required to decide the case based on the evidence. RT 160. Second, as noted above, the difference between a hit and a push is not great: both involve physical contact and both could be deemed to be the sort of unwanted physical contact that constitutes a battery. This argument thus had almost no potential to mislead

15

the jury. Finally, the evidence that petitioner had committed a battery on Gilbert was overwhelming. There was no error.

IX. <u>The Confiscation Of Petitioner's Notes (Argument IX)</u>

As petitioner took the stand, the prosecutor asked to see what was in petitioner's hand. RT 107. Petitioner explained that he had his notes and as the prosecutor read them, protested that the "opposition should [not] be looking at my notes. That's my strategy." RT 108. The court told petitioner that the prosecutor could look at anything petitioner planned to use during his testimony. <u>Id</u>.

Petitioner argues that this violated the work product privilege and the court should have permitted him to separate out his strategies from the factual matters relating to his testimony. Pet. at 36.

The work product privilege protects the "mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." <u>United States v. Nobles</u>, 422 U.S. 225, 238 (1975). It is not, however, a constitutional privilege. <u>Nichols v. Bell</u>, 440 F.Supp.2d 730, 814 (E.D. Tenn. 2006). Accordingly, the claim does not raise a question cognizable on federal habeas. <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991).

Petitioner may be claiming that the prosecutor's perusal of his notes interfered with his Sixth Amendment right to represent himself, a claim of constitutional dimension. However, he has neither alleged that the action actually hampered his ability to defend himself during the rest of the trial nor pointed to any portion of the record showing that any claimed violation of his rights prejudiced his defense. In the absence of such a showing, his Sixth Amendment claim fails. <u>United States v. Morrison</u>, 449 U.S. 361, 366-67 (1981) (interference with attorney client relationship that had no impact on Sixth Amendment rights did not justify dismissing charges); <u>Williams v. Woodford</u>, 384 F.3d 567, 584 (9th Cir. 2004) (Sixth Amendment is violated only if interference with attorney-client relationship prejudices the defense).

X. <u>The Use Of Hearsay (Argument X)</u>

At trial, the prosecutor asked both police officers what petitioner said about the incident on the bus and both testified that petitioner said, "I didn't do anything. I just pushed the guy out of the way." RT 70, 81. Petitioner challenges the admission of this testimony which, he claims, is hearsay. Pet. at 37. Petitioner contends that his own testimony shows that he did not tell the police he pushed Gilbert. Pet. at 38.

As noted above, federal habeas is not available for questions of state law, including evidentiary questions. <u>Estelle</u>, 502 U.S. at 67-68; <u>Jeffries v. Blodgett</u>, 5 F.3d 1180, 1192 (9th Cir. 1993). Moreover, it does not appear that the admission of this statement violated even state law: admitting the statement of a party opponent is a well-recognized exception to the hearsay rule. Cal. Evid. Code § 1220.

XI. <u>Other Matters</u>

In his traverse, petitioner argues that he was denied his right to a speedy trial on the misdemeanor charges and adds that the trial judge was not impartial. Traverse at 4, 5. "A Traverse is not the proper pleading to raise additional grounds for relief," <u>Cacoperdo v. Demosthenes</u>, 37 F.3d 504, 507 (9th Cir. 1994), and the court declines to exercise its discretion to consider them.

XII. <u>Motions To Expedite Habeas Relief</u>

Petitioner has filed two motions to expedite habeas relief; both are moot in light of these findings and recommendations.

IT IS HEREBY ORDERED that petitioner's motions to expedite habeas relief (docket nos. 35 & 38) are denied as moot.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

/////

/////

1   These findings and recommendations are submitted to the United States District
2   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty
3   days after being served with these findings and recommendations, any party may file written
4   objections with the court and serve a copy on all parties.  Such a document should be captioned
5   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
6   shall be served and filed within ten days after service of the objections.  The parties are advised
7   that failure to file objections within the specified time may waive the right to appeal the District
8   Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
9   DATED: August 23, 2007.

_____
U.S. MAGISTRATE JUDGE

2/sher1310.157